**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

ALAN W. HENDERSON,                     :

     Plaintiff,                     :

                                Case No. 3:11cv00198

  vs.                     :

                                District Judge Walter Herbert Rice

MICHAEL J. ASTRUE,                     :     Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                     :

     Defendant.                     :

# REPORT AND RECOMMENDATIONS[1]

## I.    <u>Introduction</u>

Plaintiff Alan W. Henderson is a former construction worker who asserts that his health problems – nerves, depression, and panic attacks – have prevented him from working since August 1, 2003.[2] He previously applied for Supplemental Security Income (SSI) with the Social Security Administration, but his SSI application was denied on the ground that he was not under a "disability" within the meaning of the Social Security Act. He brings the present case challenging the denial of his SSI application. The Court has jurisdiction in this case under 42 U.S.C. §405(g).

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Plaintiff filed his initial application for SSI on August 24, 2004. (Tr. 77-80). On September 21, 2005, an ALJ dismissed Plaintiff's request for a hearing because it was not filed within 60 days of the reconsideration denial. (Tr. 142-45). The record does not indicate that this decision was appealed.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the

Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's reply (Doc. #15), the

administrative record, and the record as a whole.

Plaintiff seeks an Order reversing the administrative decision to deny his SSI

application and remanding for assignment to a new Administrative Law Judge (ALJ) with

instructions to hold a new hearing and issue a new decision.  The Commissioner seeks an

Order affirming the ALJ's decision.

## II.    Background

### A.    Plaintiff's Background and Testimony

Plaintiff was 53 years old at the time of the ALJ's decision.  He is thus considered

to be "closely approaching advanced age" for purposes of resolving his SSI claim.  *See* 20

C.F.R. § 416.963(d); *see also*, Tr. 36, 364.  He has a high school education, and his past

relevant jobs involved work as a part's maker, a core maker, and a sand mixer.  (Tr. 205-

12).

After his SSI application was denied during the initial administrative proceedings,

the matter proceeded to a hearing before ALJ Thomas R. McNichols, II.  On July 15,

2009, Plaintiff requested, and the ALJ granted, a continuance to give Plaintiff time to

obtain an attorney.  (Tr. 164-66, 349-57).  His hearing was rescheduled to occur on

September 1, 2009.  (Tr. 176-80, 358-97).  Plaintiff appeared *pro se* at the September 1st

hearing.  He had only recently retained an attorney who filed a motion to continue the day

before the hearing. (Tr. 188, 360-61). At the start of the hearing, ALJ McNichols denied Plaintiff's attorney's motion to continue (and Plaintiff's verbal request) for a continuance. (Tr. 189, 361-63). The hearing proceeded with Plaintiff appearing *pro se*.

Plaintiff testified during the hearing that he did not have any physical problems that prevented him from working. He stated, in part, "it ain't nothing to do with my body. It's my mind. And when I left prison I was a different man when I got out of there." (Tr. 368). During 1999 and 2000, Plaintiff served seventeen months in prison. When describing his mental health problems, he explained, "I was in prison. That's when it all started. . . ." (Tr. 367). He further stated, "To make a long story short it was in prison in the showers, okay. You can read that in my mental health [sic]. *Id*. (presumably referring to his mental health records). During mental health counseling, Plaintiff reported that he had been physically and sexually assaulted while in prison. (Tr. 310). Plaintiff added, during the ALJ's hearing, "my mind was going crazy after I got out of prison." (Tr. 367).

When asked if he had any physical problems that prevented him from working, he answered, "Just my nerves. I can't handle being around a crowd of people. . . ." *Id*. Upon further questioning about his physical health, Plaintiff explained that for the past two years, he had a large rotator cuff tear in his left shoulder. *Id*. at 369. He testified that his shoulder pain was constant, and he estimated that its severity was typically about an 8 on a 0 to 10 pain scale (0 being no pain; 10 being worst pain imaginable). (Tr. 380).

Plaintiff also testified that he had problems with depression, anxiety, and panic attacks. (Tr. 373-74). He became nervous easily. (Tr. 374). He attended counseling

approximately 4 times per year, and he had done so for the past 3 years. (Tr. 375). His medications included Prozac, Elavil, Xanax, and Zyprexa. (Tr. 376). He explained, "The medications helps a little and then when I go to talk to people[,] when I go to talk to the nurse I can't hardly talk much." *Id.* He experienced panic attacks about once a week or once every two weeks. (Tr. 373). A panic attack would typically last about 30 seconds. *Id.* Nothing seemed to trigger a panic attack; he would "just be sitting there and it [would] come on . . . ." (Tr. 373-74). He also had difficulty being around people, and he emphasized that he suffered from "bad nerves." (Tr. 374). He noted, "Well, you know, I – my nerves just – I've lost so much of life. It's – and it just drove me – I can't take it no more you know. Can't take it." (Tr. 374).

Plaintiff reported that he stopped drinking approximately two years before his hearing and noted, "I have drunk a few beers or something but not like I was . . . . Not like my DUIs." (Tr. 377). He no longer attended Alcoholics Anonymous meetings. (Tr. 378). And he had not been hospitalized for any reason in the last couple of years before the hearing. (Tr. 379). As to his daily activities, Plaintiff acknowledged doing "a little bit" of cooking. He was able to do his dishes, wash his clothes, and clean his house. (Tr. 384-85). He described himself as "a clean person." (Tr. 385). He did not go to any store; his daughter did the shopping. (Tr. 385). He did not go to church. He did not have any friends, other than his family. He did not visit anyone, other than his family. (Tr. 385-86). He rode his bicycle about a half-hour to an hour everyday. (Tr. 386).

During a typical day, Plaintiff watched 6 hours of television and would visit with his daughter and grandchildren. (Tr. 389). He did not have a driver's license (since 2001) due to a DUI conviction. (Tr. 365). In total, he has apparently had 4 DUI convictions. (Tr. 366).

Plaintiff's most comfortable position is sitting. He has difficulty sleeping at night because pain wakes him up. He estimated that the most he could lift (1-time lifting) using both arms was 10 pounds. (Tr. 383). He did not have difficulty climbing steps. (Tr. 384).

At the conclusion of the hearing, the ALJ noted that it was the "fault" of Plaintiff and his counsel that he appeared without a representative, and Plaintiff had been given adequate time to be present with a representative. (Tr. 395).

## B.  Medical Opinions[3]

### 1.
### Carole Foster, RN, MSN, CNP

Ms. Foster began treating Plaintiff in September 2006. (Tr. 309). At Plaintiffs' initial evaluation, Ms. Foster estimated his GAF[4] at 45 (Tr. 311), indicating "serious

---

[3] Plaintiff submitted medical evidence to the Appeals Council that was never before the ALJ. *See* Tr. 327, 328-35. The Court may not consider this evidence in its substantial evidence review as the Court is limited to reviewing the record evidence before the ALJ. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007)(citing *Cline v. Comm'r of Soc. Sec*., 96 F.3d 146, 148 (6th Cir. 1996)).

[4] Health care professionals use the "GAF" (Global Assessment of Functioning) scale to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at 32-34.

5

symptoms . . . or . . . serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). . . ." <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 4th ed., Text Revision at p. 34.

In November 2006 and in January 2008 and again in April 2008, Ms. Foster estimated that Plaintiff's then-current GAF was 55 (Tr. 301, 303, 308), referring to "moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 4th ed., Text Revision at p. 34.

On April 9, 2008, Ms. Foster wrote a letter explaining that Plaintiff was being treated for major depressive disorder with psychosis, post-traumatic stress disorder (PTSD), and alcoholism in remission for the past nine months. (Tr. 299). She noted that Plaintiff had not responded well to medications and continued to have paranoia, visual hallucinations, and profound depression. He had symptoms of PTSD with frequent flashbacks and fears of being around others.

Ms. Foster reported that Plaintiff exhibited visible shakes, avoidant eye contact, and diaphoresis along with crying throughout his appointments. According to Ms. Foster, Plaintiff's medications helped with his sleep but were otherwise ineffective. She concluded, "The client has interrupted sleep due to pain and further mood instability." (Tr. 299).

**2.**
**<u>Michael J. Wuebker, Ph.D.</u>**

Dr. Wuebker is a one-time evaluating psychologist. On July 5, 2006, he evaluated Plaintiff at the request of the Ohio Bureau of Disability Determination. (Tr. 270-76). Dr. Wuebker reported, "The claimant voiced that he has been basically physically healthy. Mr. Henderson asserted that he began to deal with depression and anxiety in about 2000, after serving seventeen months in prison for the Theft by Deception charge. Mr. Henderson acknowledged that he began to have a problem with alcohol in 1995. . . . He talked about still drinking a six-pack of beer weekly. In 1996, he voiced that he began to use crack. . . . He stopped using crack in 1996. He attended AA for about thirty days in 2001. . . ." (Tr. 271).

Dr. Wuebker observed that Plaintiff's affect was blunted, his mood was depressed, he experienced feelings of hopelessness and helplessness, irritability, isolative behavior, decreased concentration, loss of energy, tearfulness, anhedonia, an intermittent sleep pattern, suicidal ideation, panic attacks (about once a week), paranoid thinking, nightmares about his experiences in prison, intrusive thoughts, an inability to interpret proverbs, and marginal insight and judgments. (Tr. 272-73). Dr. Wuebker diagnosed Plaintiff with major depressive disorder, recurrent, moderate, alcohol dependence, panic disorder, and chronic PTSD. (Tr. 274).

Dr. Wuebker opined that Plaintiff was moderately limited in his ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks in a work environment and that he was moderately limited in withstanding stress and pressures associated with day-to-day activities. *Id.*

7

**3.**
**Karla Voyten, Ph.D./Tonnie Hoyle, Psy.D.**

Psychologist Dr. Voyten reviewed Plaintiff's medical records on July 7, 2006 at the request of the Ohio Bureau of Disability Determinations.  She diagnosed Plaintiff with major depressive disorder, moderate without psychotic features; post traumatic stress disorder without agoraphobia; and alcohol dependence (with physiological dependence).  (Tr. 285, 287, 290).  Dr. Voyten opined that Plaintiff had no restriction in his activities of daily living; mild limitations in social functioning; moderate difficulties in his ability to maintain concentration, persistence, or pace; and no episodes of decompensation, each of extended duration.  (Tr. 292).

In her assessment of Plaintiff's functional capacity, Dr. Voyten discussed Plaintiff's current activities of daily living as follows:

> Current ADLs show that clmt [Plaintiff] retains the ability to perform routine daily activities. Clmt lives with daughter and her boyfriend.  Visits children and grandchildren, rides bicycle most days, watches TV[,] cooks, cleans, and shops.  His current GAF is 51 and he retains the ability to manage funds independently.

(Tr. 280)(footnote added).  A GAF of 51 indicates "symptoms ... or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job) . . . ."  Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at p. 34.  Dr. Voyten – relying on Dr. Wuebker's report – noted that Plaintiff's "ability to understand, remember, and follow simple directions i[s] unimpaired.  No difficulty shown in exam with memory;" he "retains the ability to sustain concentration

on simple tasks;" his "ability to relate to others is unimpaired"; he reported "no difficulty getting along with past supervisors or co-workers"; his "ability to withstand the stress and pressure of daily work activity is moderately impaired"; he "would likely have difficulty performing work related tasks in a stressful environment"; and he "appears capable of carrying out simple tasks in low stress situations." (Tr. 280). Dr. Voyten opined, "The clmt[']s statements are found credible in nature but not in limitation of function. Clmt capable of performaing [sic] simple, routine work, at a reasonable pace, that clmt is motivated to perform, in setting with regular expectations." (Tr. 280).

In March 2007, psychologist Dr. Hoyle stamped her agreement with Dr. Voyten's assessment. (Tr. 280, 282). Dr. Hoyle explained:

> I have reviewed all the evidence in the file and the assessment of 7/7/06 is affirmed as written.
>
> New MER from Shelby County Counseling Center. Claimant sought treatment after his initial denial. He presented with anxiety and PTSD complaints. MER indicates that at intake he indicated he had nothing to drink for the last two weeks, yet he smelled of alcohol. He stated the medication was not helping , but on examination, his depressive sx [symptoms] were improving. He was not compliant with maintaining appts with either therapist or psychiatrist. He discontinued his meds indicating he did not feel they were helping.
>
> Credibility is also questionable due to initial statements that he had been looking for work after release from prison in 2000. He stated that he gave up looking 2 yrs ago because nobody would hire him due to his 6 felonies. His PTSD resulting from prison did not appear to be an issue until more recently. . . . [handwritten notes omitted]
>
> Due to credibility concerns non-compliance with treatment, prior assessment 7/7/06 is affirmed.

(Tr. 297).

### III. The "Disability" Requirement and Administrative Review

#### A. Applicable Standards

The Social Security Administration provides SSI to indigent individuals who meet certain eligibility requirements. Chief among these, for purposes of this case, is the "disability" requirement. To receive SSI, an applicant must be a "disabled individual." 42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. 42 U.S.C. §1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70. An SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992).

#### B. Social Security Regulations

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 30-32; *see also* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

10

1.    Is the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

C.    **ALJ McNichols' Decision**

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 17, 2006, his SSI application date. (Tr. 32).  The ALJ found at Step 2 that Plaintiff has the severe impairments of "1) depression (anxiety); 2) PTSD (post traumatic stress disorder); and 3) alcoholism." *Id.*

The ALJ determined at Step 3 that Plaintiff does not have an impairment or combination of impairments that meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 33).

At Step 4 the ALJ assessed Plaintiff's residual functional capacity as follows:

[T]he claimant has the residual functional capacity (RFC) to perform medium work as defined in 20 CFR 416.967(c) subject to: 1) no work above shoulder level on the left side; 2) no climbing o[f] ropes, ladders, or

scaffolds; 3) no exposure to hazards; 4) low stress tasks with no exposure to
the general public and no over-the-shoulder supervision; 5) limited contact
with co-workers and supervisors and no teamwork; and 6) no requirement
to maintain concentration on a single task for longer than 15 minutes at a
time. By definition, medium work ordinarily requires the ability to lift 25
pounds frequently and 50 pounds occasionally and to engage in a good deal
of sitting, standing, or walking.

(Tr. 35).

The ALJ found Plaintiff's allegations of disability less than credible. (Tr. 36).

And he concluded that Plaintiff was not capable of performing his past relevant work as a

construction worker. (Tr. 36).

At Step 5, the ALJ found that considering Plaintiff's age, education, work

experience, and RFC, there are jobs that exist in significant numbers in the national

economy that he can perform. (Tr. 37).

In the above manner, the ALJ's five-step sequential evaluation led him to

ultimately conclude that Plaintiff was not under a disability and, consequently, not

eligible to receive SSI. (Tr. 38).


IV.    **Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ

applied the correct legal standards and whether the findings of the ALJ are supported by

substantial evidence." *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 406 (6th Cir.

2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    **Discussion**

### A.    **The Parties' contentions**

Plaintiff contends that the ALJ erred by requiring him to testify at the

administrative hearing without his appointed representative and by failing properly evaluate the medical source opinion or sufficiently develop the record in view of the fact that he was unrepresented at the hearing. Plaintiff also argues that the ALJ failed to properly evaluate his credibility.

The Commissioner argues that substantial evidence support the ALJ's non-disability determination. The Commissioner asserts that the ALJ fully considered all of the medical evidence and the ALJ's decision is consistent with the opinions of Drs. Wuebker, Voyten, and Hoyle. The Commissioner also argues that the ALJ adequately considered the opinion of nurse practitioner, Ms. Foster. And, according to the Commissioner, the ALJ found that Henderson's claims of disabling symptoms were not fully credible.

B.    **Discussion**

**1.**
**The ALJ's Denial of a Continuance**

The ALJ addressed Plaintiff's pro se status at the second administrative hearing and denied Plaintiff's second request for a continuance as follows:

> The claimant appeared and testified at a hearing held on September 1, 2009. . . . Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative.
>
> At a previous hearing held on July 15, 2009, the claimant requested a continuance in order to retain an attorney. At that time, the Administrative Law Judge gave the claimant a detailed explanation of his rights and responsibilities about obtaining an attorney or other representation as soon as possible. A continuance was granted on this occasion, but he was

informed that another continuance would not be granted for the purpose of his acquiring representation. The claimant voiced his understanding and signed a written acknowledgment form [Tr. 164].

A notice, dated July 15, 2009, was issued that the hearing had been re-scheduled for September 1, 2009. On August 28, 2009 (shortly before the re-scheduled hearing), the claimant returned his acknowledgment of notice form, on which he indicated he could not be present at the re-scheduled hearing. Subsequently, his daughter or other person phoned the ODAR office to request that another continuance be granted, but these requests for a continuance were denied. In response to multiple phone calls, the caller was informed at least three different times that the request for continuance was denied and advised that the claimant should appear on the date and time of the scheduled hearing or risk dismissal of his Request for Hearing.

Later, on August 31, 2009, the law firm of Binder and Binder sent via fax form SSA-1696 to establish one of their attorneys as the claimant's representative, and the law firm also requested a continuance of the hearing, but the law firm was notified by phone that the request for continuance was denied.

The claimant did appear at the hearing on September 1, 2009, and he gave testimony, notwithstanding his refusal to sign a waiver of representation. the claimant was informed that he or his attorney would be allowed to submit any further evidence by the end of the week. No further evidence was filed by the law firm or the claimant.

It is noted that the SSA-1696 form submitted by the Binder and Binder law firm was signed by the claimant on August 21, 2009, but the form was not sent via fax to the ODAR office until August 31, 2009, very close to the re-scheduled hearing date. Moreover, the claimant had ample time to obtain attorney representation following the July 15, 2009, hearing, but waited over a month to sign a contract form for representation. Despite being well informed of the necessity to establish the claimant's representation in a timely manner, neither the claimant nor the law firm acted with due diligence to establish a proper representation of the claimant at the hearing scheduled for September 1, 2009. Therefore, the issuance of the hearing decision shall not be delayed further.

(Tr. 29-30).

Social Security Regulations provide, "The administrative law judge will change the time or place of the hearing if [a Plaintiff] ha[s] good cause[.]"  20 C.F.R. §416.1436(d).  "Good cause" for a change in the hearing time or place exists in two situations that do not apply in the present case.[5]  A claimant may also seek to establish show "good cause" in other circumstances.  *See* 20 C.F.R. §416.1436(f).  The Regulations explain to claimants:

> Factors affecting the impact of the change include, but are not limited to, the effect on the processing of other scheduled hearings, delays which might occur in rescheduling your hearing, and whether any prior changes were granted to you.  Examples of such other circumstances which you might give for requesting a change in the time or place of the hearing, include, but are not limited to, the following:
>
> (1)    You have attempted to obtain a representative but need additional time;
>
> (2)    Your representative was appointed within 30 days of the scheduled hearing and needs additional time to prepare for the hearing. . . .

20 C.F.R. §416.1436(f).

The problem with the ALJ's approach to Plaintiff's first request for a continuance exists in the form he asked Plaintiff to sign.  The form placed a burden upon Plaintiff that does not appear in the Regulations.  The form states, in part, "I have been advised . . . that

---

[5]  The Regulations explain to claimants that good cause exists when:

1) You or your representative are unable to attend or to travel to the scheduled hearing because of a serious physical or mental condition, incapacitating injury, or death in the family; or

(2) Severe weather conditions make it impossible to travel to the hearing.

20 C.F.R. § 416.1436(e).

if I do not have a representative by the next scheduled hearing, I must be prepared to proceed with the hearing without a representative and, **absent extraordinary circumstances**, no further postponement will be granted in order for me to get a representative." (Tr. 164 (bold added; underline in original). The applicable Regulation, 20 C.F.R. §416.1436, provides that a Plaintiff must show "good cause" – not "extraordinary circumstances" – to obtain a continuance. The ALJ thus required Plaintiff to make a greater showing than the Regulations impose under §416.1436 to obtain a continuance of his second hearing. In doing so, the ALJ failed to apply the correct legal criteria to determining whether Plaintiff should be granted a second continuance.

Alternatively, assuming the ALJ correctly required Plaintiff to show "good cause," an assumption that may not be warranted given the ALJ's omission of any citation to §416.1436 or to the "good cause" standard, the ALJ's decision fails to adequately consider the fact that both Plaintiff and Plaintiff's recently retained counsel notified the ALJ before the September 1, 2009 hearing that he was represented by counsel. The ALJ's decision to deny a continuance overly emphasized that the notification did not occur until the day before the hearing, August 31, 2009. Yet, the Regulations permitted Plaintiff to proceed in this last-minute manner by establishing that one of the continuance factors the ALJ may consider is that Plaintiff's "representative was appointed within 30 days of the scheduled hearing and needs additional time to prepare for the hearing. . . ." 20 C.F.R. §416.1436(f)(2). Consequently, although Plaintiff and his counsel did not

inform the ALJ until August 31, 2009 that his recently retained counsel needed additional time to prepare for the ALJ's hearing, this request was timely under §416.1436(f)(2).

The Commissioner contends that the ALJ properly considered this factor in his decision. This contention, however, overlooks that the ALJ improperly considered it in the negative by finding that neither Plaintiff nor his counsel acted with due diligence. *See* Tr. 29-30. This was improper because Plaintiff and his counsel notified the ALJ of the need for a continuance within the time set by the Regulations. Although the ALJ doubtlessly (and understandably) wanted to receive notice of Plaintiff's circumstances before August 31, 2009, Plaintiff acted within the time frame set by the Regulations, which (again) described as a factor that Plaintiff retained counsel within the 30-day time period before the ALJ's hearing. By doing so and informing the ALJ of that fact within 30 days of the ALJ's hearing, Plaintiff and his counsel acted as the 20 C.F.R. §416.1436(f)(2) allowed.

In the ALJ's comment at both the first (July 15, 2009) hearing and during the September 1, 2009 hearing further reveal that he was concerned that Plaintiff's case was 3½ years old. (Tr. 352). Although this was a proper factor to consider under §416.1436(f), the ALJ appears to have faulted Plaintiff for the delay. The ALJ told Plaintiff, "as I told you in July this is a very old case, over three and a half years old. I need to get you a Decision as soon as possible. It has to be this month in fact according to the Social Security commissioner. So that's why at this late stage late yesterday I could not grant a continuance to keep postponing things. . . ." (Tr. 361-62). Yet, in contrast,

18

the Regulations permitted the ALJ to grant Plaintiff a continuance. *See* §416.1436(f). Additionally, the ALJ's emphasis on the age of Plaintiff's administrative case impliedly charged Plaintiff with causing the 3½ years of delay in bringing this case to a hearing. This was certainly unfair, if not incorrect; the more likely cause was the large number of pending SSI applications pending awaiting administrative decision. The delay alone, moreover, was – at best for the Commissioner – a factor to consider when resolving whether a continuance should be granted under 416.1436(f); it was not an automatic factor requiring the ALJ to deny a continuance, as the ALJ incorrectly explained to Plaintiff at the hearing. *See* Tr. 361-62.

The Commissioner contends that Plaintiff suffered no prejudice by the denial of a continuance because the ALJ kept the administrative record open until the end of the week, but Plaintiff's counsel did not supplement the record. This, however, overlooks the fact that the ALJ only gave counsel three days to supplement the record – a very short time when counsel was recently obtained. This also overlooks Plaintiff's repeated statements during the hearing that revealed not only his desire to have his counsel present during the hearing but his confusion about the proceedings. Plaintiff stated, for example, "I can't sit hear and talk without a lawyer. I don't know what to say. I don't know what to do. . . ." (Tr. 361); "Can I – how can I do anything without a lawyer?" (Tr. 362); "How am I supposed to go to court without a lawyer?" (Tr.362); "I don't know what to do?" (Tr. 363). When the ALJ asked Plaintiff if he had any objections to the admission of Exhibits, Plaintiff answered, "I don't know . . . what you mean?" (Tr. 364). The ALJ then

admitted the exhibits "without objection." *Id.* Near the end of the hearing, the ALJ asked Plaintiff if he had anything else to say; Plaintiff answered, "I just feel kind of strange sitting here without a lawyer is all. I don't know what to say." (Tr. 395). The discussions between the ALJ and Plaintiff reveal that Plaintiff did not want to proceed without his counsel present and that he lacked a basic understanding of the proceeding and how to represent himself adequately during the hearing. The ALJ, moreover, failed to consider the possibility that Plaintiff's mental health difficulties may have played a part in the circumstances leading to his request for a continuance and may have also contributed to Plaintiff's lack of understanding of how to proceed or what to say on his own behalf during the ALJ's hearing.

The Commissioner argues that in *Brace v. Comm'r of Soc. Sec.*, 97 Fed.Appx. 589, 592 (6th Cir. 2004), the United States Court of Appeals for the Sixth Circuit upheld a denial of a continuance when a claimant's attorney acted in an arguably less culpable manner than Plaintiff's attorney. *Brace*, however, does not discuss 20 C.F.R. §416.1436 and there is no indication in *Brace* that the ALJ required the claimant to show "extraordinary circumstances" to obtain a continuance, as the ALJ in the present case. *See Brace*, 97 Fed. Appx. at 597. The ALJ in *Brace*, moreover, allowed the claimant thirty days after the administrative hearing to submit additional evidence. In the present case, the ALJ allowed a mere three days for Plaintiff or his counsel to submit additional evidence. For these reasons, *Brace* presents circumstances distinguishable from

Plaintiff's circumstances and does not support the Commissioner's support for the ALJ's decision to deny Plaintiff's request for a continuance of the September 1, 2009 hearing.

Accordingly, the ALJ erred by imposing a greater burden upon Plaintiff than the Regulations provided to deny Plaintiff's and his counsel's request for a continuance of the September 2, 2009 hearing.

## 2.
## Medical Source Opinions

Plaintiff contends that the ALJ failed to properly evaluate the evidence of record and he simply adopted the opinions from the two non-examining stage agency psychologist.

The Commissioner contends that ALJ's decision is supported by the opinions of Drs. Wuebker, Voyten, and Hoyle. The Commissioner further points out that in some areas, the work restrictions set by the ALJ in his assessment of Plaintiff's mental residual functional capacity were even more limiting than those set by the medical sources of record.

In the alternative to the ALJ's error in denying Plaintiff's, and his counsel's, request for a continuance of the September 1, 2009 hearing, the ALJ committed reversible error by crediting the opinions of Drs. Wuebker, Voyten, and Hoyle, and by discounting Ms. Foster's opinions, without applying the legal criteria mandated by the Regulations.

Under the Regulations, the opinions of one-time examining physicians and psychologists and record-reviewing physicians and psychologists are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. 20 C.F.R. §416.927(d), (f); *see also* Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *2-*3. The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see also* 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same). The ALJ relied on the opinions of Dr. Wuebker without evaluating his opinions under any of the regulatory factors. *See* Tr. 34-36. Dr. Wuebker, moreover, evaluated Plaintiff in July 2006, before he began receiving mental health treatment with Ms. Foster. Dr. Wuebker, therefore, formed his opinions without having the benefit of reviewing Plaintiff's treating mental health records.

The ALJ placed "considerable weight" on the opinions of Drs. Hoyle and Voyten – non-evaluating, record-reviewing psychologists – "as their assessments are well-supported by the clinical data and treatment history." (Tr. 36). The ALJ's single, conclusory sentence fails to indicate or explain what clinical data or what aspect of Plaintiff's treatment history supported these medical sources' opinions. Because of this, the ALJ neglected to provide sufficient explanation of why he placed considerable weight on the opinions of these medical sources. *See* 20 C.F.R. §416.927(f)(2)(ii) ("Unless the

treating physician's opinion is given controlling weight, the administrative law judge

__must explain__ in the decision the weight given to the opinions of a State agency medical or

psychological consultant or other program physician or psychologist, as the

administrative law judge must do for any opinions from treating sources, nontreating

sources, and other nonexamining sources who do not work for us.")(emphasis added); *cf.*

Social Security Ruling 96-6p, 1996 WL 374180 at *2-*3 ("The Regulations provide

progressively more rigorous tests for weighing opinions as the ties between the source of

the opinion and the individual become weaker.  For example, the opinions of physicians

or psychologists who do not have a treatment relationship with the individual are weighed

by stricter standards, based to a greater degree on medical evidence, qualifications, and

explanations for the opinions, than are required of treating sources.).

        As to nurse practitioner Ms. Foster, the Commissioner contends that the ALJ

adequately considered her opinion because the Regulations and Rulings maintain a strict

distinction between acceptable and non-acceptable medical sources.  The ALJ, however,

gave only cursory consideration to her opinions and did not apply the legal criteria set

forth in 20 C.F.R. §416.927(d)(2)-(6) to Ms. Foster's opinions.  This legal criteria applies

even though Ms. Foster is not characterized as an acceptable medical source under 20

C.F.R. §416.913(a).  *See* Social Security Ruling 06-03p, 2006 WL 2329939 at *4

("depending on the particular facts in a case, and after applying the factors for weighing

opinion evidence, an opinion from a medical source who is not an 'acceptable medical

source' may outweigh the opinion of an 'acceptable medical source,' including the

medical opinion of a treating source. . . ."); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (explaining that Ruling 06-03p notes, "With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners ... have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists. Opinions from these medical sources who are not technically deemed 'acceptable medical sources,' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file.").

Accordingly, Plaintiff's challenges to the ALJ's evaluation of the medical source opinions are well taken.[6]

## IT IS THEREFORE RECOMMENDED THAT:

1.  The Commissioner's non-disability finding be vacated;

2.  No finding be made as to whether Plaintiff Alan W. Henderson was under a "disability" within the meaning of the Social Security Act;

3.  This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4.  The case be terminated on the docket of this Court.

---

[6] Because a remand is warranted in this case, an in-depth analysis of the parties' contentions concerning the ALJ's evaluation of Plaintiff's credibility is unwarranted.

June 14, 2012 \_\_\_\_\_s/Sharon L. Ovington\_\_\_\_\_
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).